**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| CHERRELL WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| | ) _____ |
| vs. | ) |
| | ) |
| LIFEBRITE COMMUNITY HOSPITAL | ) |
| OF EARLY, LLC and MIRACLE CARTER | ) |
| *in her individual capacity,* | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |
| _____ | ) |

## <u>COMPLAINT</u>

Plaintiff Cherrell Williams ("Plaintiff" or "Ms. Williams") hereby asserts her Complaint against the above-captioned Defendant LifeBrite Community Hospital of Early, LLC (hereinafter "employer" or "Defendant LifeBrite" or "Company") and Defendant Miracle Carter (hereinafter "Defendant Carter") and shows the Court as follows:

### NATURE OF ACTION

1.

This is an action pursuant to 1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), for sexual harassment and

retaliation; 2) Americans with Disabilities Act; and 3) state tort law claims of sexual assault, battery, intentional infliction of emotional distress, negligent supervision, and negligent retention.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. (civil rights), 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), and 42 U.S.C. § 12117(a) and 42 U.S.C. §2000e-5(f)(3)(ADA).

3.

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims which form the basis of the Complaint.

4.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because Defendant LifeBrite resides and maintains a place of business in the Middle District of Georgia, Albany Division, and the unlawful conduct complained of herein occurred in this district and division.

## PARTIES

### 5.

Plaintiff Cherrell Williams is an adult citizen and is entitled to bring actions of this nature and type.  Plaintiff is a resident of the Middle District of Georgia and is subject to this Court's jurisdiction.

### 6.

At all relevant times to this action, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the ADA.

### 7.

Plaintiff is a person with a disability within the meaning of the ADAAA, 42 U.S. C. §12102(1)(A), (B), and (C).  Specifically, Ms. Williams is a person with a disability because she suffers from a physical impairment that substantially limits one or more major life activities, had a record of such impairment, and because Defendant regarded her as having such an impairment.

### 8.

Defendant LifeBrite employed Plaintiff.

### 9.

Defendant LifeBrite is a for-profit corporation with over 500 employees, that is registered to and does transact business in the State of Georgia.

10.

Defendant LifeBrite is an employer within the meaning of the ADA.

11.

Defendant LifeBrite is a covered employer under Title VII.

12.

Defendant LifeBrite is subject to this Court's jurisdiction and may be properly served with process by delivering a copy of the Summons and Complaint upon its registered agent Adam Walters, 100 Blue Fin Circle, Suite 1, Savannah, GA 31410.   At all relevant times, Defendant was the employer of Plaintiff, as defined by the ADA and Title VII.

13.

Defendant Carter was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Defendant Carter was Plaintiff's direct supervisor who had authority to terminate Plaintiff's employment.

14.

Defendant Carter may be served with Summons and Process through LifeBrite's registered agent, Adam Walters, 100 Blue Fin Circle, Suite 1, Savannah, GA 31410.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 15.

Ms. Williams has exhausted all administrative prerequisites prior to filing this action.

### 16.

Ms. Williams timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), raising her claims for violation of Title VII and the ADA.  The EEOC completed its investigation and issued a Notice of Right to Sue.  Ms. Williams brings this action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT FACTS

### 17.

Defendant is a healthcare provider that offers hospital based and clinical healthcare services, including a nursing home.

### 18.

On April 2, 2018, Ms. Williams began working for Defendant LifeBrite as a Transporter or "Patient Transport Driver."

19.

As a Patient Transport Driver, Ms. Williams provided patient transportation to and from Defendant LifeBrite's Hospital / Nursing Home.

20.

Pursuant to the Patient Transport Driver job description, Ms. Williams was only expected to lift a maximum of 50 lbs. less than 35% of the time.  Ms. Williams was not required to lift more than 100 lbs. in her position as a Patient Transport Driver.

21.

While in the Patient Transport Driver position, Ms. Williams reported to Defendant Carter, who served as Plaintiff's immediate supervisor.

22.

Shortly after Plaintiff began her employment with Defendant LifeBrite, Defendant Carter began subjecting Plaintiff to verbal and physical harassment on the basis of her gender.  The harassment was carried out in the workplace during regular workhours as well as outside of regular workhours.

23.

All harassment alleged herein was unwanted, unwelcomed, and uninvited by Plaintiff.

24.

Specifically, Defendant Carter frequently made comments and engaged in conduct of a sexual nature as related to Plaintiff's body, Plaintiff's sex life with her husband, and Plaintiff's husband's genitalia.  Defendant Carter's comments and conduct included, but is not limited to, the following:

a) Defendant Carter made sex-related comments in the workplace about her own sex life and/or that of other employees during work hours;

b) Defendant Carter called Plaintiff at home after work hours on several occasions for reasons unrelated to work;

c) Defendant Carter showed up to Plaintiff's home uninvited on several occasions;

d) Defendant Carter asked Plaintiff about her tattoos while staring at her cleavage;

e) Defendant Carter asked questions and made comments about the size of Plaintiff's husband's genitalia;

f) Defendant Carter asked questions and made comments about Plaintiff's sex life;

g) On August 6, 2018, Defendant Carter slapped Plaintiff on the buttocks while stating to Plaintiff, "slap that ass and make it jiggle";

    h) Defendant Carter slapped plaintiff on the buttocks so hard it made an audible sound that other employees could and did hear;

    i) Upon slapping Plaintiff on the buttocks, Defendant Carter then proceeded to gyrate behind Plaintiff while rubbing her stomach against Plaintiff's buttocks.

Defendant Carter's sexual comments and conduct occurred over the course of four (4) or five (5) months.

25.

Plaintiff's co-workers, Hal Wimberly (Floor Tech) and Michael Hopson (Floor Tech), were present on August 6, 2018, when Defendant Carter slapped Plaintiff on the buttocks.

26.

Hal Wimberly personally witnessed Defendant Carter's unwanted touching of Plaintiff's person.

27.

Hal Wimberly submitted a written statement to Defendant LifeBrite corroborating Plaintiff's complaint of unwanted sexual touching by Defendant Carter.

28.

Michael Hopson heard the sound of Defendant Carter's hand slapping Plaintiff on the buttocks.

29.

Michael Hopson submitted a written statement to Defendant LifeBrite corroborating Plaintiff's complaint of unwanted sexual touching by Defendant Carter.

30.

Plaintiff reported Defendant Carter's inappropriate comments and unwanted touching to Ginger Cushing ("Cushing") on August 7, 2018.  Specifically, Ms. Williams told Ms. Cushing that she was being sexually harassed by her supervisor. Ms. Williams explained to Cushing that the harassment included the incident of unwanted touching as well as other unwelcome conduct including but not limited to, Ms. Carter 1) showing up at Ms. Williams' home uninvited; 2) calling Ms. Williams' home late in the evening after work hours for reasons unrelated to work; 3) asking Ms. Williams' about her tattoos while staring at her cleavage; 4) asking questions and making comments about the size of Ms. Williams' husband's genitalia; 5) asking questions and making comments about Ms. Williams' sex life;

and 6) making other sex-related comments in the workplace about her own sex life or that of other employees.

31.

Cushing did not immediately meet with Defendant Carter to investigate Plaintiff's allegations.

32.

Upon information and belief, Cushing is related to Defendant Carter.

33.

Upon receiving Ms. Williams' complaint, Cushing instructed Ms. Williams not to report Defendant Carter to Human Resources.

34.

Ms. Cushing also told Ms. Williams that she would "handle it."

35.

Unbeknownst to Plaintiff, Cushing merely sent Defendant Carter a text message asking her to respect her employees.

36.

Upon information and belief, Cushing is related to Defendant Carter.

37.

Prior to the incident of unwanted touching involving Plaintiff, Defendant LifeBrite previously admonished Defendant Carter improve her adherence to "safety and conduct rules, other regulations and […][overall] company policy."

38.

Prior to the incident of unwanted touching involving Plaintiff, Defendant LifeBrite previoulsy admonished Defendant Carter to improve her adherence to policy and specifically, "refrain from negative comments."

39.

On August 8, 2018, Ms. Williams was stocking shelves when Ms. Carter approached her and asked, "what's your problem?"  Ms. Williams told Ms. Carter that she touched her inappropriately and it made her feel uncomfortable.  She also told Ms. Carter to stop showing up at her home uninvited.  In response, Ms. Carter stated, "that explains the text message [Ms. Cushing] sent me saying I need to respect my employees." Ms. Carter then warned Ms. Williams that she would be "the bitch [she needed] to be."  The following day, Ms. Carter resumed discussing sex in the workplace and told Ms. Williams "your husband must not have put it down on you... you still got that attitude."

40.

Upon information and belief, Cushing never reported Plaintiff's sexual harassment complaint to Human Resources.

41.

Upon learning of Cushing's text message to Defendant Carter, Plaintiff escalated her complaint to Human Resources.

42.

Specifically, when Plaintiff realized that Cushing did not report any of the incidents to Human Resources, the following day, Ms. Williams escalated her sexual harassment complaint to Kathy Busby, Respondent's Human Resources Manager.

43.

On August 10, 2018, Ms. Williams told Ms. Busby that Defendant Carter touched her inappropriately at work and told her to "make it jiggle." Ms. Williams told Ms. Busby that on more than one occasion, Ms. Carter asked her about the size of her husband's genitalia and questioned Ms. Williams about her sex life. Ms. Williams further told Ms. Busby that Ms. Carter questioned her about her tattoos; stared at her cleavage; and made other comments about sex in the

workplace as related to Ms. Carter's own sex life as well as that of other employees.

44.

After Plaintiff discussed her complaint of sexual harassment with Ms. Busby, Ms. Busby asked Ms. Williams to provide a written statement, which Plaintiff did.

45.

Ms. Williams was never contacted during the alleged investigation of her sexual harassment complaint against Defendant Carter.

46.

In fact, when Ms. Williams subsequently contacted corporate headquarters on August 21, 2018, Barbara Dennis informed her that headquarters was unaware of any investigation.

47.

On August 10, 2018, Ms. Busby moved Ms. Williams from the Transporter position to that of Unit Secretary.

48.

Soon thereafter, Ms. Cushing told Ms. Williams she was being reassigned to "work the floor as a CNA (Certified Nursing Assistant)," which meant Ms. Williams would be required to assist with patients' physical care and needs,

including but not limited to, physically lifting patients, bathing, bathroom assistance, and changing patients' soiled bed linen and clothing—all of which were duties Ms. Williams did not previously perform in her position as a Transporter.

49.

In addition to working the floor as a CNA, Ms. Williams was also still required to carry out the duties of a Transporter and when she was not needed to assist with transportation, she was required to answer the telephone and call lights and respond to the doorbell.

50.

After complaining of sexual harassment, Ms. Williams was asked not only to continue performing the duties she was hired to perform as a Transporter, but she was also asked to work as a CNA on the floor, and as a Receptionist.

51.

After complaining of harassment, Ms. Williams experienced an increase of job duties and new duties that were unpleasant, more physically demanding, more labor-intensive, and overall, less desirable.

52.

Ms. Williams remained in this undesirable make-shift position from August 10, 2018 to August 21, 2018.

53.

Prior to being reassigned to "work the floor as a CNA (Certified Nursing Assistant)," other employees were envious of the Patient Transport Driver position Ms. Williams had previously held.

54.

On or around August 21, 2018, Defendant Carter admitted touching Ms. Williams inappropriately while serving as her supervisor.

55.

Defendant LifeBrite ratified the supervisor's conduct by reassigning Ms. Williams to a less desirable position after she complained of sexual harassment.

56.

On August 21, 2018, Ms. Williams injured herself while lifting a patient, resulting in lower lumbar muscle strain.

57.

Ms. Williams' physical impairment substantially limited her functional mobility, ability to care for herself, and ability to perform daily living tasks.

58.

On or around August 30, 2018, Ms. Williams' doctors placed her on medical restrictions, including but not limited to, no repetitive bending.

59.

Ms. Williams remained under her doctor's care and on medical restrictions, including but not limited to, no repetitive bending, for approximately 1.5 years.

60.

Respondent was notified of Ms. Williams' medical restrictions and on or around September 11, 2018, Respondent issued a letter to Ms. Williams stating that she was being offered a position as a Receptionist.

61.

Although Ms. Williams was placed into a "Receptionist" position, she was required to work as a Door Keeper, whose job was to answer the doorbell each time it rang.

62.

Because Ms. Williams was working as a Door Keeper, the nature of her position required repetitive bending in violation of her medical restrictions.

63.

As a result of Defendants' misconduct, Ms. Williams suffered mental, emotional, and physical symptoms of distress.

## **CLAIMS FOR RELIEF**

## **COUNT ONE: SEXUAL HARASSMENT  IN VIOLATION OF TITLE VII**

### **(Against Defendant LifeBrite)**

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

64.

Plaintiff is a female and member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq.

65.

At all times relevant to this action, the relationship between Plaintiff and Defendant Carter was a relationship of "employee" to "employer" within the meaning of 42 U.S.C. § 2000e, et. seq. such that a cause of action exists where harassment on the basis of sex is alleged to have occurred.

66.

At all times relevant to this action, Defendant Carter was an employee of Defendant LifeBrite.   Furthermore, Defendant Carter was Plaintiff's direct supervisor who had the authority to undertake and recommend tangible employment actions against Plaintiff.

17

67.

Defendant Carter subjected Plaintiff to unwelcome sexual harassment by—among other things—inappropriately touching Plaintiff, making sexually explicit comments to Plaintiff, thereby exposing her to a hostile work environment on the basis of her gender.

68.

The unwelcome sexual harassment was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's work performance or create an intimidating, hostile and offensive work environment.

69.

Defendant LifeBrite knew or should have known of the continuous harassment in the workplace but failed to take reasonable preventative or corrective measures with respect to the hostile work environment.

70.

As a proximate and direct result of Defendant LifeBrite's conduct, Plaintiff has suffered and will continue to suffer damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, for which she is entitled to recover.

## **COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII**

## **(Against Defendant LifeBrite)**

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

### 71.

Plaintiff engaged in protected activity when she complained of sexual harassment.

### 72.

As a result of her complaints, Defendant LifeBrite retaliated against Plaintiff by assigning Plaintiff to perform work that was unpleasant, more physically demanding, and overall less desirable.

### 73.

In assigning Plaintiff to perform less desirable work, Defendant knowingly and intentionally retaliated against Plaintiff for engaging in protected activity.

### 74.

The reasons given by Defendant for the adverse employment actions are pretext designed to hide Defendant's retaliatory motive.

75.

Defendant's actions constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

76.

Plaintiff is entitled to an award of backpay and benefits, compensatory damages, punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

77.

All conditions precedent to bringing this Count have been completed, performed, and/or waived.

## COUNT THREE: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA (Against Defendant LifeBrite)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

78.

Ms. Williams' lower lumbar muscle strain caused her to be substantially limited in one or more major life activities and major bodily functions, including

but not limited to, her functional mobility, ability to care for herself, and ability to perform daily living tasks.

79.

Ms. Williams had an actual disability as defined under the ADA.

80.

Ms. Williams had a record of having a disability.

81.

Defendant regarded Ms. Williams as having a disability as defined under the ADA.

82.

Ms. Williams required reasonable accommodation in order to perform the essential functions of her job.

83.

A reasonable accommodation existed that would have allowed Ms. Williams to perform the essential functions of her job.

84.

Ms. Williams requested reasonable accommodation as related to her lower lumbar muscle strain.

85.

Defendant knew Ms. Williams required reasonable accommodation in order to perform the essential functions of her job.

86.

Defendant LifeBrite could have accommodated Ms. Williams by placing her in a position that did not require repetitive bending.

87.

Defendant LifeBrite could have reasonably accommodated Ms. Williams by modifying her job duties.

88.

Defendant LifeBrite could have reasonably accommodated Ms. Williams by assigning her to a different position that did not involve repetitive bending.

89.

Defendant LifeBrite failed to provide Ms. Williams with an effective reasonable accommodation.

90.

Defendant LifeBrite's failure to reasonably accommodate Ms. Williams' disability caused her emotional distress, mental anguish and financial hardship.

91.

As a direct and proximate result of Defendant LifeBrite's failure to reasonably accommodate Ms. Williams, Ms. Williams has suffered compensatory damages including, emotional distress, mental anguish, and other non-pecuniary losses.

92.

All conditions precedent to bringing this Count have been completed, performed, and/or waived.

## COUNT FOUR: STATE LAW – SEXUAL ASSAULT & BATTERY

### (Against Defendant Carter)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

93.

Defendant Carter intentionally and deliberately touched Plaintiff's body part—including her buttocks—during her employment without her invitation or permission.

94.

Defendant Carter's actions, as described herein, were sexual in nature, insulting, and constitute unlawful and offensive touching of Plaintiff.

95.

As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages for which she is entitled to recover as provided by law.

## COUNT FIVE: STATE LAW – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against All Defendants)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

96.

Defendants conduct towards Plaintiff as stated herein was intentional and/or reckless, extreme and outrageous, and caused Plaintiff severe shame, humiliation, embarrassment and emotional distress of a nature that no reasonable person can endure.

97.

Defendants knew or should have known that such conduct would result in severe emotional distress by Plaintiff.

98.

As a result of Defendants' conduct, Plaintiff has and will continue to suffer damages for which she is entitled to recover as provided by law.

## COUNT SIX: STATE LAW – NEGLIGENT SUPERVISION AND

## RETENTION (Against Defendant LifeBrite)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

99.

Defendant LifeBrite knew or in the exercise of ordinary diligence, should have known of its employees' sexual harassment of Plaintiff.

100.

Defendant LifeBrite owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

101.

Defendant LifeBrite breached the aforementioned duty by negligently supervising and retaining its employees who continued to harass Plaintiff and therefore continued to expose Plaintiff to a hostile work environment. Further, Defendant LifeBrite ratified, condoned or adopted its employee's conduct via inaction.

102.

Defendant LifeBrite acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or her federally protected rights. Additionally and in the alternative, Defendant LifeBrite acted recklessly toward Plaintiff and/or her federally protected rights. Accordingly, Defendant LifeBrite is thus liable to Plaintiff for all damages.

## COUNT SEVEN: PUNITIVE DAMAGES

### (Against All Defendants)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

103.

Defendants' actions with respect to Plaintiff have shown willful misconduct, malice, wantonness, oppression and complete disregard of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish, and penalize Defendants for and from such conduct in the future.

## COUNT EIGHT: ATTORNEYS FEES

### (Against All Defendants)

The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

104.

Plaintiff is entitled to an award of attorneys' fees and expenses of litigation for each and every cause of action alleged herein, because Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1.  Grant to Plaintiff a jury trial on all issues so triable;

2.  Grant declaratory judgment that Plaintiff's rights under Title VII, ADA, and Georgia State Laws have been violated;

3.  Grant Plaintiff a permanent injunction prohibiting Defendants from engaging in such unlawful conduct in the future;

4.  Award compensatory damages in an amount to be determined by a jury;

5.  Award appropriate back pay, reimbursement for lost salary, and compensate for other damages in an amount to be shown at trial;

6.  Award pre-judgment interest on any award of back pay made by the jury as required by law;

7. Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

8. Award Plaintiff's attorneys' fees and any and all other costs and expenses of litigation associated with this action as provided by law; and

9. Award Plaintiff such additional relief as the Court deems proper and just.

This 2nd day of January, 2020.

SHELTON LAW PRACTICE, LLC

By:   /s/     Cherri L. Shelton
      Georgia Bar No. 27693

Shelton Law Practice, LLC
2987 Clairmont Road NE, Suite 225
Atlanta, GA 30329
Phone: (404) 865-3771   Facsimile: (678) 882-7499
cshelton@sheltonlawpractice.com


KEEGAN LAW FIRM, LLC

By:   /s/     Marcus G. Keegan
      Georgia Bar No. 410424

Keegan Law Firm, LLC
2987 Clairmont Road NE, Suite 225
Atlanta, GA 30329
Phone: (404) 842-0333   Facsimile: (404) 920-8540
mkeegan@keeganfirm.com

**ATTORNEYS FOR PLAINTIFF**